[Civ. No. 11552. Third Dist. Dec. 20, 1967.]

GERALDINE ANDERSON, Plaintiff and Respondent, v.
FRANK W. SHUMAN et al., Defendants and Appellants.

Rich, Fuidge, Dawson, Marsh & Morris and Thomas Marsh
for Defendants and Appellants.

Leep, Saunders & Halpin, Jack Halpin and Robert L. Srite
for Plaintiff and Respondent.

PIERCE, P. J.—The appeal is from a judgment following a jury verdict for plaintiff in an action for personal injuries. The injuries were caused by a fall. The fall resulted when a defectively installed bathroom sink in an apartment house became dislodged from the wall.

■ The question: Is a landlord liable to an injured tenant for the described injuries when the landlord knows and the tenant does not know that a like sink in another apartment had become dislodged and that several sinks were loose? We affirm the trial court's affirmative answer to that question.

The defendants are owners of an apartment house in Redding containing 40 separate apartments. Construction of the apartment house had been completed during the latter part of 1962. On October 3, 1964, plaintiff moved into apartment number 15. Two days later, on October 5, 1964, she slipped and fell when, while cleaning her teeth and leaning on the sink with her left elbow or forearm, the sink dislodged, spilling water onto the floor. Plaintiff's elbow was fractured.

Plaintiff had had no prior knowledge or means of knowledge that the sink would become dislodged. The apartment house manager, before the accident, had acquired the following knowledge: Several months before the bathroom sink in apartment number 19 had similarly become dislodged, and three or four other bathroom sinks in the apartment house were discovered to be loose. Defendant landlords operated the apartment house as a partnership. The active partner was defendant Harold H. Coles. The manager, Phyllis Clay, had notified Coles of the defective conditions described and had requested authority to have all bathroom sinks inspected. That was not done. Mrs. Clay testified that as an apartment would become vacant it had been her practice to test the sinks by shaking them. She had not done this, however, in plaintiff's apartment before plaintiff moved in. She had not warned plaintiff of her experiences of the past with the dislodged and loose sinks.

■ A landlord is not an insurer and it has been held that "*Subject to certain exceptions,* a lessor is not subject to common law liability for harm caused to the lessee . . . by the condition of the premises. . . ." (Italics added.) (*Finnegan v. Royal Realty Co.,* 35 Cal.2d 409, 428 [218 P.2d 17].) He is not liable for defects which are patent, and, with respect to hidden defects, it may be said to be the settled law "In this state, [that] a landlord is not liable to the tenant for injuries due to a defective condition or faulty construction of the

demised premises, in the absence of fraud, *concealment* or covenant in the lease.'' (Italics added.) (*Lee* v. *Giosso* (1965) 237 Cal.App.2d 246, 247-248 [46 Cal.Rptr. 803]; hear. den.)

■ What is concealment? We define it as being the withholding of knowledge which is material and ought to be revealed, and therefore as including the withholding of knowledge of a dangerous condition by a landlord from a tenant. There was no concealment in *Lee* v. *Giosso, supra.* The door of a wall bed had collapsed. A wrench was missing from the door's pivotal mechanism. The landlord knew the tenant had been having difficulty manipulating the bed. He knew nothing about the missing part.

Such innocence cannot be claimed here. True, when the apartment was rented to plaintiff, the landlords' agent did not know that this particular sink was about to become dislodged. But she *did* know that the bathroom sinks in this comparatively new apartment house were defective generally and had advised a general inspection.[1]

Some authorities have quibbled over the question when concealment occurs. It is variously asserted that liability arises when a landlord fails to impart ''knowledge'' or ''actual knowledge'' or ''constructive knowledge'' or ''knowledge or its equivalent'' of the defective condition. Under modern law we think it unnecessary so to quibble.

In *Ayres* v. *Wright* (1930) 103 Cal.App. 610 [284 P. 1077], it is stated (at pp. 618-619): ''A landlord is always under duty not to expose his tenant to risks of which he has knowledge. But there must be proof of *knowledge or its equivalent*[2] . . .'' (Italics added.)

Dean Prosser has stated: ''Modern ideas of social policy have given rise to a number of exceptions to . . . [the] general rules of non-liability of the lessor, which remain to be

[1]Landlord Coles testified on cross-examination: ''Q I am particularly interested, though, in her [i.e., Mrs. Clay's] request to you that she be allowed to hire a plumber for the purpose of inspecting all the sinks. Do you recall that? A I recall it, yes sir. Q And was a plumber ever hired for that purpose before the accident? A Before the accident? Q Yes? A Not to my knowledge.''

[2]The *Ayres* case states (on p. 617 of 103 Cal.App.) ''that in cases of this character there is no place for the doctrines or phrases of the law of negligence . . . what the law exacts is not care, but honesty.'' It also is stated (on p. 618): ''[W]hen . . . liability attaches, it is because, in the eye of the law, the landlord did know, not because he ought to have known.'' We are not bound by the latter statements, find no support for them in the decisions of our Supreme Court, and as the discussion to follow will indicate, they are not a correct statement of modern law.

considered below. There is increasing recognition of the fact that the tenant who leases defective premises is likely to be impecunious and unable to make the necessary repairs, and that the financial burden is best placed upon the landlord, who receives a benefit from the transaction in the form of rent.[3] . . .

"One exception developed by the common law is that the lessor, like a vendor, is under the obligation to disclose to the lessee concealed dangerous conditions existing when possession is transferred, of which he has knowledge. There is again 'something like fraud' in a failure to give warning of a known hidden danger to one who enters upon the assumption that it does not exist; and the lessor will be liable to the lessee or to members of his family for his non-disclosure. . . .

"It is not necessary that the lessor shall believe the condition to be unsafe, or even that he have definite knowledge of its existence, before he is under any duty in regard to it. It is enough that he is informed of facts from which a reasonable man would conclude that there is danger; and the decisions run the gamut of 'reasonable notice,' 'reason to know,' or 'should have known.' If he has such information, and it would lead a reasonable man to suspect the existence of an unreasonable risk of harm, it is his duty to communicate at least that suspicion. . . ." (Prosser, Law of Torts (3d ed.) § 63, pp. 413-414.)

Under the original Restatement of Torts (1934) section 358 provided that for a landlord to be liable there must be both (a) an absence of knowledge by the tenant (this, of course, is still required), and (b) knowledge by the landlord with reason to expect that the danger would not be discovered by the tenant. The comment under this section spoke of "actual" knowledge. Under "concealment," however, and in the illustrative case given in the original Restatement, a general defective condition (of concealed joists under a floor) is cited as an instance of *"concealment."* Here the landlords, both through their agent and (as to the active partner) personally, had knowledge that the method of attachment of the bathroom sinks to the wall was defective and dangerous. That had been proven. Three or four experiences throughout the building should have demonstrated the fact that the defect

[3]This reasoning is not dissimilar to the rationale expressed motivating the modern rule of liability in the products liability cases. (See e.g., *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63-64 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].)

was general. It was a hidden defect. As we view it, that knowledge *was* actual. Certainly it was "knowledge or its equivalent." It was also "concealment."

Under the new Restatement Second of Torts (1965) much broader terms have been adopted in section 358.[4] Comment (b) under section 358 states: "It is not . . . necessary that the . . . [lessor] have actual knowledge of the condition. . . . It is enough that he has reason to know that the condition exists . . . that is, that he has information from which a person of reasonable intelligence, or of his own superior intelligence, would infer that the condition exists, or would govern his conduct on the assumption that it does exist, and in addition would realize that its existence will involve an unreasonable risk of physical harm to persons on the land."

No California case has been cited to us where the court has expressly adopted the "has-reason-to-know," or what we may refer to as the "constructive knowledge," test to a case involving an injured tenant.

We mention the new Restatement rule because it is there. Under the facts of this case we need not climb to the pinnacle which it reaches. To do so would be to make dictum better left to a court in a case where further ascent is necessary. As we view the facts here, we stop at a plateau already reached and well trodden.

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 14, 1968.

---

[4]Restatement Second of Torts, section 358, states: "Undisclosed Dangerous Conditions Known to Lessor

"(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

"(a) the lessee does not know or have reason to know of the condition or the risk involved, and

"(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

"(2) If the lessee* actively conceals the condition, the liability stated in Subsection (1) continues until the lessee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."

*"lessor" is obviously intended.